**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **Christopher Kraszinski,**<br>**Plaintiff,** | ) | |
| **v.** | ) | **No. 17 - CV - 2228** |
| **Rob Roy Country Club Village Association, sued in their official and individual capacities,** | ) | **JURY DEMAND** |
| | ) | **Judge John Robert Blakey** |
| **Board of Directors of Rob Roy Country Club Village Association, sued in their official and individual capacities,** | ) | |
| **Rowell Property Management Inc., sued in their official and individual capacities**<br>**Defendants.** | ) | |

**FIRST AMENDED**

**CIVIL RIGHTS COMPLAINT**

NOW COMES, **Christopher Kraszinski**, the above referenced Plaintiff, by his attorneys, Alfred D. Ivy, III, and Jay Kumar, pursuant to 42 U.S.C., § 3601, and for his Complaint against the above referenced Defendants, and in support thereof Plaintiff states as follows:

## JURISDICTION AND VENUE

1. This is a civil rights action brought pursuant to Title VIII of the Civil Rights Act of 1968, as amended (the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988), 42 U.S.C., § 3601 et seq., and Titles II and V of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134, 12203, as well as Title II's implementing regulation, 28 C.F.R. Part 35. to redress deprivation of

Plaintiff's rights to be free from all forms of discrimination against persons with disabilities.

2. Plaintiff seeks declaratory and injunctive relief, monetary damages and civil penalties against the Defendants, under the Fair Housing Act.

3. Plaintiff at all times relevant to this cause of action was a citizen of the United States of America, resident of Cook County, Illinois.

4. Defendant Rob Roy Country Club Village Association, at all times relevant herein, was and is a corporation duly incorporated under the laws of the State of Illinois.

5. At all times relevant herein, Defendants Board of Directors of Rob Roy Country Club Village Association owned, operated, controlled, managed, maintained, supervised and/or were otherwise responsible for the Rob Roy Country Club Village Association located in Cook County, Illinois.

6. Defendant Rowell Property Management Inc. at all times relevant herein, was and is an Illinois corporation duly incorporated under the laws of the State of Illinois.

7. At all times relevant herein, Defendant Rowell Property Management Inc. was and is a supervisory and managing entity that owned, operated, controlled, managed, maintained, supervised, acted as agents for Rob Roy Country Club Village Association and the Board of Directors of Rob Roy Country Club Village Association for profit and/or were otherwise responsible for the Rob Roy Country Club Village Association.

8. Venue is proper under 28 U.S.C. § 1391 because all events or omissions giving rise to the claims alleged herein occurred in this district and because the Defendants are located in Prospect Heights, Cook County, Illinois and Elgin, Kane County, Illinois.

9. This Court has jurisdiction over this action and may grant the relief sought herein pursuant to 28 U.S.C. §§ 1331 and 1345; 42 U.S.C. § 3614(a); 42 U.S.C. §§ 12133 and 12134; and 28 U.S.C. §§ 2201 and 2202.

10. The amount in controversy exceeds $75,000.00.

## FACTUAL BASIS

11. The condominium unit at the nexus of this action, located in Cook County Illinois was purchased by Plaintiff's family in 1985.

12. Said condominium unit is located within a parcel of real property subject to rules and governance promulgated exclusively by defendant association.

13. The association is headed and managed by a Board of Directors (hereinafter "the Board") and property management company, Rowell Property Management Inc. (hereinafter "Rowell", collectively "Defendants").

14. Plaintiff has resided exclusively in the above referenced unit since 1997.

15. Beginning in 1997 and continuing through this date, Plaintiff, by and through his mother began making requests for accommodation from Defendant regarding excessive and frequent application of harmful chemical substances including landscape pesticides and herbicides outside his living unit.

16. Said requests for pesticide and herbicide accommodation were made on Plaintiff's behalf, by and through his mother, both via frequent written correspondence and in person during board meetings hosted by defendant association.

17. In those requests, Plaintiff's mother, on his behalf, presented research materials on the specific chemicals contained in the pesticides and herbicides being applied near their unit and their potential harmful effects on children.

18. Plaintiff's mother, on his behalf, expressed concern that the frequent and liberal application of pesticides and herbicides outside and near their unit could or would have negative effects on the health and development of her child.

19. During this time, Plaintiff was the only minor child residing on the real property governed by the defendant association, which included 650 condominium units and over 1,000 individual residents.

20. Plaintiff was the youngest homeowner and association member in the association's history. A vast majority of the neighborhood's residents being in retirement age and the Board was entirely consisting of members over the age of 65.

21. All of Plaintiff's requests for reduced pesticide and herbicide application and use outside and near his unit were summarily denied.

22. In 2006, Plaintiff became seriously ill and was diagnosed with an auto-immune disease that severely limited Plaintiff's ability to engage in major life activities.

23. Plaintiff's doctors advised him to avoid exposure to chemical and environmental irritants, such as pesticides and herbicides, as such substances could exacerbate his health issues.

24. Following this diagnosis, Plaintiff and his mother increased the frequency of their requests for accommodation directed to defendants, pleading that defendants stop the usage of pesticides near their residence as the ingestion of pesticides aggravated Plaintiff's condition.

25. Defendants responded to Plaintiff's requests by ceasing all lawn care and landscape services near Plaintiff's residence for a time, which caused outrage from the other neighboring owners.

26. Plaintiff and his mother attempted to persuade defendants to implement more natural and environmentally safe methods of landscaping as a way to accommodate Plaintiff's health condition and appease their angry neighbors.

27. From 2006-2009, Plaintiff, along with his mother, presented additional evidence, including clinical studies, scientific research and alternative landscaping methods, along with their requests for pesticide and herbicide accommodation to the defendant association, the Board and Rowell.

28. Defendants denied all of Plaintiff's requests for accommodation with great hostility, and even took the added step of sending all of Plaintiff's email requests directed to its Spam folder.

29. In or around 2009, defendants specifically told Plaintiff and his mother that defendants would spray more frequently outside and near his unit because the board and Rowell was tired of their frequent requests for accommodation.

30. A representative of Defendant Rowell stated to Plaintiff: "I will specifically make sure that the area around your unit is sprayed".

31. As a consequence of Defendants' actions, Plaintiff was no longer able to go outside his residential unit or leave any window open for any length of time due to the severe and adverse reaction his body had to the toxins and chemicals contained in the pesticides and herbicides being applied directly outside and near his residential unit.

32. In 2009, Plaintiff's disease progressed significantly, became completely unmanageable and left him bed-ridden for weeks at a time.

33. Plaintiff was informed by his doctors that individuals who have autoimmune conditions must avoid, as much as possible, all environmental toxins including pesticides, allergens and chemicals as these can cause complications and worsening of symptoms.

34. In 2009, Plaintiff wrote letters to Defendants requesting removal of carpeting to accommodate his disability after Plaintiff's doctors informed him that chemicals tracked onto indoor carpeting could aggravate his allergies, trigger breathing difficulties and exacerbate his auto-immune symptoms.

35. In support of Plaintiff, the doctors wrote letters recommending that, in addition to eliminating the pesticide and herbicide use outside and near Plaintiff's residential unit, that Defendants modify their policy to permit Plaintiff to remove the carpeting from his individual unit to aid in his recovery and abatement of environmental allergens and toxins from his home.

36. Plaintiff's doctors explained that carpeting traps and harbors all manner and form of environmental pollutants, allergens and toxins, including pesticides and chemicals carried into the home via personal clothing and footwear.

37. In April 2009, Defendant to responded to Plaintiff and his mother via letter stating that no policies would be changed to accommodate his condition.

38. In April 2009, defendants specifically told Plaintiff and his mother that the board made its decision to force Plaintiff and his mother to move out of the neighborhood and that they were no longer wanted in the community.

39. In 2010, Defendants, via certified mail, sent a formal 10-day demand for eviction and possession of the unit owned and occupied by Plaintiff in retaliation for his numerous requests for accommodation requests.

40. After being given notice of Plaintiff's intent to remove carpeting on his own due to his disability, and being made aware of the medical necessity as it related to his health condition, Defendants falsely accused Plaintiff of removing carpeting and replacing it with hardwood floors.

41. In 2010, Defendants subsequently filed a state court lawsuit against Plaintiff and his mother falsely alleging that Plaintiff and his mother had already removed the carpeting from their unit and replaced it with hardwood floors in violation of the association's policy.

42. The lawsuit sought a permanent injunction to prevent Plaintiff from ever being able to have any type of flooring other than wall-to-wall carpeting inside Plaintiff's unit.

43. By early 2011 Plaintiff's health drastically declined and Plaintiff is declared permanently disabled by the Social Security Administration.

44. In mid to late 2011, Plaintiff's disability further deteriorates to a severe state whereby Plaintiff's body weight plummets to 94 pounds and he becomes bedridden.

45. In 2012, during the height of Plaintiff's disability, Defendants obtained a default judgment against Plaintiff blocking his legal right to remove the carpeting.

46. That judgment also ordered Plaintiff and his mother to pay nearly $40,000 in attorneys' fees and to replace the carpeting he never removed.

47. After numerous failed attempts to reverse the state court's decision, Plaintiff and his mother believed their right to challenge Defendants' policies to be a foregone conclusion and resigned themselves to suffering in silence.

48. In 2013, Plaintiff was hospitalized and treated for psychological injuries that resulted from continuous chronic stress and trauma brought on by the repeated denials for reasonable accommodations, incessant retaliation, harassment and unremitting mistreatment by Defendants.

49. The discrimination encompassing Fair Housing Act violations and Americans with Disabilities Act violations created a systemic pattern and practice of abuse that Plaintiff was forced to endure at the hands of Defendants.

50. Defendants' continuous abuse caused Plaintiff significant trauma which lead to the psychological breakdown of Plaintiff and general decline of his health.

51. Additionally, Plaintiff developed a stress-based cardiovascular condition that was caused by Defendants ongoing failure and refusal to accommodate.

52. Despite all this, Plaintiff made further requests for accommodation to defendants and presented new information regarding his deteriorating health condition to the board.

53. Plaintiff's requests were denied again and shortly thereafter Defendants began collection activities against Plaintiff for legal fees the board incurred in the litigation previously referenced.

54. In 2014, Plaintiff was tested by his doctors and diagnosed as being highly allergic to carpeting, dust mites and house dust. Plaintiff is given medications to treat the severe allergic reactions but they offer little help as the source of the allergens, the carpeting, remains present in Plaintiff's unit.

55. In 2014, Plaintiff again wrote letters to Defendants informing them that carpeting is causing harm to his health and reiterates his requests for reasonable accommodations.

56. Plaintiff's doctors wrote more letters on behalf of Plaintiff in support of his requests for reasonable accommodations, stating that the removal of carpeting is a medical necessity.

57. Plaintiff was further diagnosed with additional allergic conditions and respiratory distress resulting from the carpeted floors present in Plaintiff's unit and was prescribed an ever-increasing number of medications.

58. Plaintiff's disease progressed to the point of permanency and his health no longer has any chance of recovery.

59. Plaintiff's health continues to deteriorate despite intensive treatment and medical care because the root cause of the problem remains unaddressed and ongoing.

60. The Defendants have not presently terminated their practice of requiring carpeting in their units nor have they terminated their practice of requiring the Plaintiff to possess carpeting, despite knowledge of his disability.

61. Since Plaintiff began making requests for accommodation, Defendants assessed fines to Plaintiff numerous times for alleged violations that were both trivial and were not assessed on other unit owners throughout 2009 and continuing thru to present day.

62. Defendants filed a judgment lien against Plaintiff's residence and then, in early 2015, unlawfully garnished the bank account of Plaintiff's mother in an attempt to satisfy its judgment lien. Defendants took this action despite knowing Plaintiff's mother was not an owner of any unit within the Association's purview.

63. Most recently, Defendants removed Plaintiff's plants from his balcony and left them on the grounds to die and be stolen. Said plants were used to aid in Plaintiff's rehabilitation.

**Count 1 – VIOLATION OF CIVIL RIGHTS PURSUANT TO THE FAIR HOUSING ACT OF 1968, 42 U.S.C., § 3601**

64. Plaintiff realleges and incorporates by reference paragraphs 1-63 as though they were fully restated herein.

65. Under the Federal Fair Housing Act, as amended in 1988, it is illegal to: (a) make a dwelling unavailable to a person on account of a handicap, 42 U.S.C.A, § 3604(f); or (b) interfere with persons on account of having exercised their rights, or their having aided or encouraged other persons in the exercise or enjoyment or right, that are granted or protected by 42 U.S.C.A, § 3604(f), 42 U.S.C.A, § 3617.

66. Plaintiff suffers from numerous disabilities and is disabled or handicapped as defined by statute and state law.

67. Plaintiff made frequent and repeated requests for accommodation, including requests to abate pesticide use near his residence and to remove the carpeting inside his residence, accompanied by letters from his medical doctors, all of which were denied without legal basis or adequate explanation by Defendants.

68. As of the date of this filing, Defendants continue to refuse Plaintiff's request for accommodation.

69. The 1988 amendments to the Federal Fair Housing Act, by its terms, render invalid any rule or policy that purports to require or permit any discriminatory housing practice. 42 U.S.C.A, § 3615.

70. Defendants' policy regarding floor coverings within individual units is discriminatory on its face because it serves to make dwellings unavailable to persons on account of their

handicap in violation of the Federal Fair Housing Act, 42 U.S.C.A, § 3604(f) and 42 U.S.C.A, § 3617.

71. Defendants' continuous and ongoing refusal to permit Plaintiff to remove the carpeting in his unit is arbitrary and discriminatory because it serves to make dwellings unavailable to persons on account of their handicap in violation of the Federal Fair Housing Act, 42 U.S.C.A, § 3604(f) and 42 U.S.C.A, § 3617.

72. Defendants acted and continue to act intentionally, willfully, and in disregard for the rights of Plaintiff and other similarly situated persons.

73. Defendants' actions described above constitute a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, or a denial of rights protected by the Fair Housing Act to a disabled person, which denial raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

74. Defendants' actions described above constitute: discrimination in the sale or rental, or otherwise making unavailable or denying, a dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(1); discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(2); a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person an equal opportunity to use and enjoy a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(3)(B);e. interference with the rights of persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons with disabilities in the exercise or enjoyment of rights granted or protected by the FHA, in violation of 42 U.S.C. § 3617.

75. Plaintiff is a victim of Defendants' discriminatory conduct and is an "aggrieved person" within the meaning of 42 U.S.C. §§ 3602(i) and 3614(d)(1)(B), and has suffered harm and damages as a result of Defendants' conduct.

**Count 2 – RETALIATION UNDER THE FAIR HOUSING ACT OF 1968, 42 U.S.C., SECTION 3601**

76. Plaintiff realleges and incorporates by reference paragraphs 1-63 as though they were fully restated herein.

77. In 2010, following Plaintiff's repeated and frequent requests for accommodation, Defendants filed a retaliatory lawsuit against Plaintiff which prevented Plaintiff from removing the carpeting in his unit that contributed to and/or caused his health injuries.

78. Defendants' lawsuit is a violation of the Federal Fair Housing Act and the Federal Fair Housing Amendments Act of 1988 as it sought to obtain enforcement of a restrictive covenant and by-law that is discriminatory under the Act.

79. Defendants knew or should have known that filing a lawsuit and obtaining a permanent injunction against Plaintiff, a disabled person seeking reasonable accommodation under the Fair Housing Act, would effectively deny and prevent Plaintiff from gaining relief for his health condition.

80. Defendants knew or should have known that the relief Defendants sought was in violation of the Federal Fair Housing Act and Federal Fair Housing Amendments Act of 1988 as it denied reasonable accommodations and modifications to a protected class of disabled individuals.

81.

82. Defendants undertook the above actions against Plaintiff only after and precisely because Plaintiff made multiple requests for accommodation under the Fair Housing Act as to give rise to a reasonable inference of retaliation for Plaintiff's lawful exercise of his rights.

83. As of the date of this filing, Defendants acted and continue to act intentionally, willfully, and in disregard for the rights of Plaintiff and other similarly situated persons.

84. Also as of the date of this filing, Defendants are seeking to foreclose on Plaintiff's residence based upon the default judgment obtained against Plaintiff in this same retaliatory lawsuit.

85. Defendants' actions described above constitute a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, or a denial of rights protected by the Fair Housing Act to a disabled person, which denial raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

86. Defendant's actions described above constitute: discrimination in the sale or rental, or otherwise making unavailable or denying, a dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(1);discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(2); a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person an equal opportunity to use and enjoy a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(3)(B);e. interference with the rights of persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons with disabilities in the exercise or enjoyment of rights granted or protected by the FHA, in violation of 42 U.S.C. § 3617.

87. Plaintiff is a victim of Defendant's discriminatory conduct and is an "aggrieved person" within the meaning of 42 U.S.C. §§ 3602(i) and 3614(d)(1)(B), and has suffered harm and damages as a result of Defendant's conduct.

## Count 3 – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

88. Plaintiff realleges and incorporates by reference paragraphs 1-63 as though they were fully restated herein.

89. Plaintiff  is a "qualified individual with disabilities" within the meaning of the ADA, 42 U.S.C. §§ 12102 and 12131(2) and 28 C.F.R. § 35.104.

90. Defendant Rob Roy Condominium Association is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104, because Defendants' spraying of pesticides outside Plaintiff's unit is in an area that can be and is accessed by pedestrians and other members of the public.

91. The subject areas wherein the pesticides are sprayed are open and unfenced grounds inside a large housing subdivision comprised of 650 units and containing multiple publicly accessible streets

92. Plaintiff has commenced this action based on reasonable cause to believe that a person or group of persons has been discriminated against and that such discrimination raises issues of general public importance.  42 U.S.C. § 12133.

93. Plaintiff seeks declaratory and injunctive relief and compensatory damages against Defendants.

94. Plaintiff has attempted informal resolution of this matter and has exercised good faith concerted efforts to seek Defendants' voluntary compliance with the ADA, without success.

95. All conditions precedent to the filing of this Complaint have occurred or been performed.

96. Defendants' actions described above constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35.

97. Defendants' actions described above exclude individuals with disabilities from participation in and deny them the benefits of the services, programs, or activities of a public entity on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(a).

98. Defendants' actions described above do not afford qualified individuals with disabilities an opportunity to participate in or benefit from the services of a public entity that are not equal to those afforded others, in violation of Title II of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(1)(ii).

99. Defendants' actions described above otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(1)(vii).

100. Defendants' actions described above fail to make reasonable modifications in policies, practices, or procedures necessary to avoid discrimination on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(7).

101. Defendants' actions described above utilize methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the

basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(3).

102. Defendants' actions described above exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(g).

103. Defendants' actions described above interfere with an individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the ADA, in violation of Title V of the ADA, 42 U.S.C. § 12203(b).

104. Defendants acted and continue to act intentionally, willfully, and in disregard for the rights of others.

105. Plaintiff is a victim of Defendants' discriminatory conduct is an "aggrieved person" under the ADA. 42 U.S.C. § 12203(c) and has sustained damages.

## Count 4 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (Spraying of Pesticides Outside of / Near His Unit)

106. Plaintiff realleges and incorporates by reference paragraphs 1-63 as though they were fully restated herein.

107. Plaintiff was and continues to be in the zone of physical danger from the on-going spraying of chemicals and pesticides outside or and near his unit, which still occur routinely since his accommodation requests were made.

108. Plaintiff reasonably feared and continues to fear for his own safety because of the defendants' negligence in continuing to spray pesticides around his unit to present day.

109. Plaintiff has suffered and continues to suffer physical injuries and psychological damages as a result of the emotional distress caused by the defendants' on-going negligence.

110. Defendants knew of the risks associated with its actions because Plaintiff made numerous requests for accommodation regarding the spraying of pesticides, including asking for advance notice of treatment schedules, use of less environmentally toxic chemicals and not applying the chemicals directly outside his unit.

111. Defendants both ignored and refused to grant Plaintiff any accommodation.

112. Defendants had a duty to accommodate Plaintiff in accordance with the Federal Fair Housing Act and Federal Fair Housing Amendments Act of 1988.

113. Defendants knew that Plaintiff feared for his safety, health and well-being from exposure to the hazardous chemicals they were relentlessly applying.

114. Defendants breach their duty to Plaintiff when they denied Plaintiff's reasonable request for accommodation.

115. Defendants knew that denial of said reasonable accommodations would cause Plaintiff significant emotional distress and physical injury, yet nonetheless defendants chose to act willfully, intentionally and indifferently.

116. Defendants' conduct and actions to block Plaintiff from protections granted under the Federal Fair Housing Act and Federal Fair Housing Amendments Act of 1988 were intentional, extreme and outrageous.

117. Defendants knew and were informed of Plaintiff's health condition and disability.

118. Defendants knew and were informed of Plaintiff's numerous accommodation requests. Given the state and nature of Plaintiffs requests Defendants consciously knew that denial of said requests would undoubtedly cause emotional distress to Plaintiff or any reasonable person.

119. Defendants were informed and knew that due to financial reasons and the current state of the housing market Plaintiff was unable to relocate and Defendants knew he would be entrapped and forced to live devoid of the accommodations crucial to the state of his health.

**Count 5 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Filing of Lawsuit to Enjoin Plaintiff from Removing Carpeting in His Unit)**

120. Plaintiff realleges and incorporates by reference paragraphs 1-63 as though they were fully restated herein.

121. Defendants had a duty to accommodate Plaintiff's reasonable request to remove the carpeting inside his residence in accordance with the Federal Fair Housing Act and Federal Fair Housing Amendments Act of 1988.

122. Defendants breached its duty to Plaintiff when instead of accommodating Plaintiff's request to remove the carpeting in his residential unit Defendant chose to file a lawsuit to block Plaintiff from removing the carpeting in his unit.

123. Defendants knew that if it filed a retaliatory lawsuit against Plaintiff and his mother, Plaintiff would have to face significant financial and physical difficulties in defending such a lawsuit, as Defendants had been previously informed of the severe nature of Plaintiff's medical condition.

124. Defendants knew that if it filed a retaliatory lawsuit against Plaintiff and his mother, Plaintiff's right to accommodation would be forever forestalled.

125. Defendant's knew its act of suing Plaintiff would cause Plaintiff extreme stress, fear and an accelerated decline in his health.

126. Plaintiff lived and continues to live in fear and suffer emotional distress from fear of developing complications and damage to his health.

127. Plaintiff has been living in fear of becoming homeless and has received unwarranted threats from Defendants ranging from notices and fines for non-existent violations to numerous acts of vandalism of personal property and harassment as well as threats of eviction, litigation and foreclosure.

128. Plaintiff suffered and continues to suffer physical injuries as well as psychological injuries from Defendants' intentional conduct.

129. Plaintiff has suffered and continues to suffer physical manifestations of fear and stress.

130. Defendants' conduct is the cause of Plaintiff's emotional distress.

131. Defendants' conduct was intentional, deliberate and calculated to cause Plaintiff physical and emotional harm.

132. The emotional distress Plaintiff suffered has been medically diagnosed and is medically significant and has required Plaintiff to seek medical care.

133. Plaintiff has been and continues to be under intensive and extensive medical treatment.

134. The emotional distress Plaintiff suffered at the hands of Defendants has been so severe that it placed Plaintiff's life in danger.

135. Defendants' conduct in filing a lawsuit against Plaintiff to enjoin Plaintiff from removing the carpeting in his individual unit was extreme and outrageous.

136. Defendants intended to cause or recklessly or consciously disregarded the probability of causing emotional distress.

137. Plaintiff suffered and continues to suffer severe or extreme emotional distress from being sued for requesting accommodation, enjoined from removing the carpeting in his unit only, being assessed thousands of dollars legal fees, and being subjected to harassing collections activities by Defendants and/or Defendants' agents, which continue to present day.

138. Defendants' conduct actually and proximately caused the plaintiff's injuries, damages and emotional distress.

## **Count 6 – NEGLIGENCE**

139. Plaintiff realleges and incorporates by reference paragraphs 1-63 as though they were fully restated herein.

140. Defendants owe a duty to Plaintiff to accommodate him in accordance with the Federal Fair Housing Act, the Federal Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act, and to prevent reasonably foreseeable harm.

141. Defendants owe a duty to Plaintiff to ensure that the rules, practices and policies overseen by defendants are in compliance with Federal and State laws.

142. Defendants' on-going and continuing refusal to grant any health and illness accommodation to Plaintiff is negligent, willful and wanton, reckless and a breach of Defendant's duty to Plaintiff.

143. Defendant's negligence is a proximate cause of significant bodily injury, psychological injury and other damages to Plaintiff.

144. Plaintiff has in fact sustained significant bodily injury, psychological injury and other damages.

## PRAYER FOR RELIEF

WHEREFORE, **Christopher Kraszinski,** Plaintiff respectfully requests that this Honorable Court review his claims and enter orders that:

A. Defendants be served by the U.S. Marshall, or other competent entity legally authorized to serve process in the State of Illinois, and be ordered to file an answer within the time allotted by law.

B. Judgment be rendered in favor of Plaintiff and against Defendants on all counts asserted herein.

C. Declare that Defendants' actions violate the Fair Housing Act, the Federal Fair Housing Amendments Act of 1988, and the Americans with Disabilities Act and its implementing regulations;

D. Enjoin Defendants, their officers, employees, agents, successors and all other persons in active concert or participation with it, from enforcing the Defendants' rules that unfairly infringe upon the rights of reasonable enjoyment of persons with disabilities;

E. Enjoin Defendants, their officers, employees, agents, successors and all other persons in active concert or participation with it, from enforcing the Defendants' rules in a manner that discriminates because of disability in violation of the Fair Housing Act and the Americans with Disabilities Act;

F. Order Defendants to take all affirmative steps to ensure its compliance with the Fair Housing Act and Americans with Disabilities Act, including steps necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate to the extent practicable the effects of its unlawful housing practices as described herein;

G. Order Defendants to take all affirmative steps to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the Defendants' discriminatory conduct;

H. Award monetary damages, pursuant to the FHA, 42 U.S.C. § 3614(d)(1)(B), and the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35, to all aggrieved persons.

I. Plaintiff be awarded compensatory damages for his physical injuries, pain and suffering and mental anguish.

J. Plaintiff be awarded punitive damages against Defendants.

K. Plaintiff be awarded reasonable expenses incurred in this litigation, including his reasonable attorney's fees, expert fees, costs of suit and other reasonable litigation expenses, pursuant to 42 U.S.C., Section 1988(b) and (c).

L. Assess a civil penalty against the Defendants in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

M. Plaintiff receive any such additional relief as the interests of justice may require and any other relief to which he may be entitled.

N. Plaintiff be granted a jury trial in this matter.

Respectfully submitted
**Christopher Kraszinski**, Plaintiff

s/ Alfred D. Ivy, III
Alfred D. Ivy, III - Attorney for Plaintiff

s/ Jay Kumar
Jay Kumar - Attorney for Plaintiff


| | |
|---|---|
| Alfred D. Ivy, III, #6277701<br>Attorney for Plaintiff<br>159 Lincoln Square<br>300 S. Broadway Ave.<br>Urbana, Illinois 61801<br>(217) 480-4893 cell<br>lawmba1@gmail.com | Jay Kumar, #60100<br>Jay Kumar Law<br>Attorney for Plaintiff<br>208 S. Jefferson St. #204<br>Chicago, Illinois 60661<br>(312)-767-7903<br>jay@jaykumarlaw.com |