UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER KRASZINSKI, | |
| Plaintiff, | Case No. 17-cv-2228 |
| v. | |
| ROB ROY COUNTRY CLUB VILLAGE ASSOCIATION, et al., | Judge John Robert Blakey |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christopher Kraszinski sued Rob Roy Country Club Village Association, its board of directors, and its property manager, Rowell Property Management, Inc., under the Fair Housing Act (FHA) and the Americans with Disabilities Act (ADA). Plaintiff lives in a condominium unit at Rob Roy and suffers from a disabling autoimmune disease. He alleges that Defendants retaliated against him by suing him in state court after he requested accommodations from some of the association's policies, discriminated against him based upon his disability, and caused him emotional distress. Defendants moved to dismiss every count for lack of subject matter jurisdiction and failure to state a claim. For the reasons explained below, this Court grants the motion in part and denies it in part.

**I.  Background**

**A.  The Complaint's Allegations**

Defendants govern and manage the condominium association where Plaintiff has lived since 1997. [37] ¶¶ 13–14. Beginning in 1997, Plaintiff, through his

mother, regularly asked Defendants to stop applying landscape pesticides and herbicides outside his condominium unit. *Id.* ¶ 15. Plaintiff's mother made these requests through written correspondence and in person during Defendants' board meetings. *Id.* ¶ 16. Defendants denied each request. *Id.* ¶ 21. They continue spraying chemicals around Plaintiff's unit today, and Plaintiff's mother continues asking Defendants to use fewer chemicals. *Id.* ¶¶ 15, 21.

In 2006, Plaintiff was diagnosed with an autoimmune disease that severely limits his "ability to engage in major life activities." *Id.* ¶ 22. Doctors told Plaintiff to avoid toxins—like pesticides and herbicides—that could aggravate his condition. *Id.* ¶ 23. Subsequently, Plaintiff and his mother "increased the frequency of their requests" that Defendants stop using pesticides near Plaintiff's home. *Id.* ¶ 24. Defendants not only denied those requests, but also told Plaintiff in 2009 that they would spray more often outside his unit because Plaintiff's frequent requests for accommodation annoyed them. *Id.* ¶¶ 28–30.

By 2009, Plaintiff's autoimmune disease had progressed significantly and often rendered him bedridden for several weeks in a row. *Id.* ¶ 32. Plaintiff's doctors again recommended that he avoid exposure to toxins like pesticides that could aggravate his symptoms. *Id.* ¶¶ 33–34. The doctors also explained that Plaintiff's wall-to-wall carpeting likely harbored environmental toxins carried inside on people's clothing and shoes. *Id.* ¶ 34. Plaintiff and his doctors then asked Defendants to modify the association's policy to allow Plaintiff to remove the carpeting from his unit to "aid in his recovery." *Id.* ¶¶ 34–35.

In April 2009, Defendants refused to modify the carpeting policy. *Id*. ¶ 37. Defendants specifically told Plaintiff that they wanted to force Plaintiff and his mother to move out of the community. *Id*. ¶ 38. In 2010, Defendants sued Plaintiff and his mother in state court seeking an injunction to prevent them from removing the carpeting in the unit, as discussed below. *Id*. ¶¶ 41–42.

In 2011, after Plaintiff's health declined further, the Social Security Administration declared him permanently disabled. *Id*. ¶ 43. In 2013, Plaintiff was hospitalized for psychological injuries stemming from the "chronic stress and trauma" of Defendants denying his requests for accommodation and harassing him. *Id*. ¶ 48. Additionally, Plaintiff has developed a "stress-based cardiovascular condition" that Defendants' behavior caused. *Id*. ¶ 51.

In 2014, doctors diagnosed Plaintiff with severe allergies to carpeting and dust. *Id*. ¶ 54. Plaintiff takes medication for the allergies, but the medication offers only minimal relief because carpeting—the source of the allergens—remains in Plaintiff's unit. *Id.* From 2014 through the present, Plaintiff continued asking Defendants to allow him to remove the carpeting from his unit. *Id*. ¶¶ 15, 55–56. In response to Plaintiff's continued requests, Defendants, among other things, fined Plaintiff for trivial policy violations that they never held other unit owners accountable for and removed medicinal plants from Plaintiff's balcony. *Id*. ¶ 63.

B. **State Court Litigation**

In the state lawsuit, Defendants sought to enforce a condominium bylaw that barred Plaintiff from removing the carpeting in his unit. *Id*. ¶¶ 42, 78. Plaintiff

3

raised defenses of retaliation under federal statutes, and also argued that Defendants violated his rights to speech, participation in government, and a healthy environment. *See* [39-3] at 15–21.[1] The state court issued a default judgment barring Plaintiff from removing the carpeting in his unit in 2012. [37] ¶ 45. Plaintiff has made "numerous failed attempts" to reverse the permanent injunction in state court. *Id.* ¶ 47. Plaintiff alleges that the state litigation contributed to his poor health and caused him severe emotional distress. *Id.* ¶¶ 128–30.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

In evaluating a complaint on a Rule 12(b)(6) motion, this Court accepts all

---

[1] Defendants attached certain documents from the state-court proceedings, such as Plaintiff's motion to dismiss their complaint, to their motion to dismiss. This Court can take judicial notice of the state-court documents, *see Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994), and thus properly considers them here, *see Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

4

well-pled allegations as true and draws all reasonable inferences in Plaintiffs' favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). On a motion to dismiss, this Court may consider the complaint itself, documents attached to the complaint, documents central to the complaint and to which the complaint refers, and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436.

## III. Analysis

Defendants argue that the *Rooker-Feldman* doctrine bars Plaintiff's claims because they either seek review of the state court's decision or are "inextricably intertwined" with that decision. [39] at 2, 6. Defendants also argue that, even if *Rooker-Feldman* does not apply, this Court should dismiss all counts as time-barred or insufficiently pled. *Id.* Plaintiff counters that he seeks damages independent of the state court's judgment and that several of his claims did not "come into fruition until well after" the state court entered judgment against him. [46] at 4–5.

### A. *Rooker-Feldman*

The *Rooker-Feldman* doctrine, which takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), establishes that no federal court except the United States Supreme Court "may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). Thus, under *Rooker-Feldman*, lower federal courts lack subject matter jurisdiction to review civil state-court judgments. The doctrine applies when the state court's judgment constitutes

5

"the source of the injury of which plaintiffs complain in federal court." *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005); *GASH Assocs. v. Rosemont*, 995 F.2d 726, 729 (7th Cir. 1993)).

*Rooker-Feldman* not only bars direct review of a state-court decision, but also of claims "inextricably intertwined" with a state-court decision. *See, e.g., Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532–33 (7th Cir. 2004). Claims are "inextricably intertwined" when they call upon the district court "to review the state-court decision." *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993). Identifying an inextricably-intertwined claim requires distinguishing between a federal claim alleging injury *caused* by a state-court judgment and a federal claim alleging "an independent prior injury that the state court failed to remedy." *Taylor*, 374 F.3d at 533. If a court determines that a claim is inextricably intertwined, the court must then determine whether the plaintiff had "a reasonable opportunity to raise the issue in state court proceedings." *Id.* (quoting *Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002)). *Rooker-Feldman* bars any claim for which the plaintiff had that reasonable opportunity. *Id.*

In this case, Plaintiff's claims concern "two operative actions": (1) Defendants prohibiting Plaintiff from removing the carpet in his condominium unit; and (2) Defendants spraying pesticides around the unit. [39] at 2. This Court addresses each category in turn.

### 1. Carpeting-Related Claims: Counts I, II, V, and VI

The state lawsuit resulted in a permanent injunction barring Plaintiff from

6

removing carpeting in the unit, consistent with the association's bylaws. [37] ¶¶ 42, 45. Addressing the issue of whether Plaintiff has the right to remove the carpeting from his unit would require this Court to review the state-court decision, which *Rooker-Feldman* prohibits. *See, e.g.*, *Harold*, 773 F.3d at 885. *Rooker-Feldman* also bars any claims alleging that the state-court decision caused Plaintiff's injuries. *See, e.g.*, *GASH*, 995 F.2d at 729.

Count I alleges that Defendants violated the FHA by denying Plaintiff's requests for accommodation to remove the carpeting, pursuant to their (allegedly) discriminatory carpeting policy. [37] ¶¶ 10–11. Addressing such a claim would require this Court to review the injunction prohibiting Plaintiff from removing the carpet in his unit and decide whether the state court should have issued the injunction in the first place. *See Harold*, 773 F.3d at 885.

Count I also alleges that Plaintiff has suffered an injury because of "Defendants' continuous and ongoing refusal to permit Plaintiff to remove the carpeting in his unit." [37] ¶ 71. Here, Plaintiff claims, in effect, that the injunction, which authorized Defendants' "continuous and ongoing refusal" to let Plaintiff remove the carpeting, caused his injury; he also claims (in different words) that the state court erred by barring him from removing the carpeting. Under *Rooker-Feldman*, such a claim cannot proceed in federal court. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999); *GASH*, 995 F.2d at 728. Accordingly, this Court dismisses Count I.

Count II alleges that Defendants knew that the relief they sought in the state

7

lawsuit violated the FHA, and that Defendants continue to violate the FHA by seeking to enforce the judgment they obtained against Plaintiff in the state lawsuit. [37] ¶¶ 80, 84. Ultimately, in the same way, Count II asks this Court to review the propriety of the state court's decisions. Any finding that enforcing the judgment violates the FHA would necessarily rule upon the correctness of the state judgment in violation of *Rooker-Feldman*. *See Ritter*, 992 F.2d at 754; *Harold*, 773 F.3d at 885. This Court dismisses Count II.

Count V alleges that Defendants intentionally filed the state lawsuit to cause Plaintiff emotional distress in retaliation for his frequent requests for accommodation. [37] ¶¶ 122–24, 129–31. This claim alleges injuries independent from the state-court decision, because Plaintiff suffered this alleged harm regardless of the decision that the state court reached. *See Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995) (holding that *Rooker-Feldman* bars claims that a state court issued an erroneous or unconstitutional decision, but does not bar claims "that people involved in the decision violated some independent right" of the plaintiff's). *Rooker-Feldman* does not bar Count V because this count does not seek review of the state-court judgment, and it raises an injury separate from that judgment. *See Taylor*, 374 F.3d at 533.

Defendants argue that Plaintiff had a reasonable opportunity to raise the injuries alleged in Count V in state court. [39] at 6. This Court, however, need not engage in a reasonable-opportunity analysis, because Count V alleges injuries independent from the state court judgment, and thus, does not qualify as

8

inextricably intertwined with the state-court judgment. *See, e.g., Taylor*, 374 F.3d at 533; *Long*, 182 F.3d at 557–58. *Rooker-Feldman* does not bar Count V.

Finally, Count VI alleges that Defendants negligently refused to accommodate Plaintiff under the FHA and the ADA, and thereby caused Plaintiff physical and mental injuries. [37] ¶¶ 140–44. Count VI essentially restates Count I and relies upon the same factual allegations. *See id.* ¶¶ 64, 139 (incorporating by reference paragraphs 1–63). Thus, addressing Count VI would likewise require this Court to impermissibly rule upon whether the state court erred by granting Defendants' request to enjoin Plaintiff from removing the carpeting in his unit. *See Ritter*, 992 F.2d at 754. Because Plaintiff's alleged injuries from having carpeting in his unit flow from the state-court decision requiring him to keep the carpeting, *Rooker-Feldman* bars this claim. *See, e.g., GASH*, 995 F.2d at 729. This Court dismisses Count VI.

Alternatively, to the extent that Plaintiff's reference to the ADA in Count VI raises a claim not barred by *Rooker-Feldman*,[2] this Court dismisses Count VI as duplicative of Counts I and III. *See Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014) (explaining that courts have authority to dismiss a duplicative claim that alleges the same facts and injury as another claim). Count I alleges that Defendants violated the FHA by failing to accommodate Plaintiff; Count III alleges a failure to accommodate under Title III of the ADA. [37] ¶¶ 64–105. Count VI alleges that Defendants *negligently* failed to accommodate Plaintiff under the FHA and the ADA. *Id.* ¶¶ 140–44. But, as discussed below, there is no separate cause of

---

[2] See below for a discussion of Plaintiff's Count III ADA claim under *Rooker-Feldman*.

9

action for a negligent violation of either statute, so Count VI merely parrots the earlier counts.

To prevail on an FHA accommodation claim, a disabled plaintiff must show that he requested, and the defendant denied, an "accommodation that was both reasonable and necessary to afford him an equal opportunity to use and enjoy his dwelling." *United States v. WHPC-DWR, LLC*, 491 F. App'x 733, 736 (7th Cir. 2012) (citing *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) (en banc)). Whether the defendant denied the accommodation intentionally or negligently does not matter. *See id.* Likewise, intent provides just one method of proving discrimination under Title III of the ADA; a defendant could also face liability for negligently refusing to provide a reasonable accommodation. *See A.H. ex rel. Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 589, 593 (7th Cir. 2018); *see also Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 846 (7th Cir. 1999) (discussing similarities between the ADA and the Rehabilitation Act, and explaining that the Rehabilitation Act's legislative history shows that Congress intended to remedy discrimination that it perceived "to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect"). Thus, this Court dismisses Count VI.

### 2. Pesticide-Related Claims: Counts III and IV

Count III alleges that Defendants violated the ADA by frequently applying pesticides around Plaintiff's condominium unit despite his requests for accommodation. [37] ¶¶ 15, 97–105. Count IV claims that Defendants negligently

10

inflicted severe emotional distress upon Plaintiff by consistently spraying these pesticides near his unit. *Id.* ¶¶ 107–09. Counts III and IV do not require this Court to review the state-court decision; they raise independent injuries that the state court did not remedy, and thus are not inextricably intertwined with the state lawsuit. *See Centres v. Town of Brookfield, Wis.*, 148 F.3d 699, 702 (7th Cir. 1998).

The state court's permanent injunction addressed Defendants' carpeting policy, but—at least on the record before this Court—it never reached the pesticide issue. *See* [37] ¶¶ 42, 45; [39-2] at 11. Plaintiff's main defense in state court was that the action was a "strategic lawsuit against public participation (SLAPP)" intended to silence and chill Plaintiff and his mother from making requests for accommodation and publicizing negative information about pesticides to their community. *See* [39-3] at 15, 19. Plaintiff's claims here about Defendants' pesticide spraying go far beyond his affirmative defense in state court. *See Long*, 182 F.3d at 559. The pesticide spraying constitutes an independent and ongoing injury that the state court did not address or remedy, so addressing that claim here does not require reviewing the state-court decision. *Taylor*, 374 F.3d at 533. Because the pesticide issue is not inexplicably intertwined with the state-court lawsuit, *Rooker-Feldman* does not bar Counts III and IV.

Defendants argue that Plaintiff had a reasonable opportunity to raise these issues in state court. [39] at 6. Maybe, but again, that fact would only have become relevant to a *Rooker-Feldman* analysis after a determination that Counts III and IV are inexplicably intertwined with the state-court decision. *See, e.g., Taylor*, 374

F.3d at 533; *Long*, 182 F.3d at 557–58. As stated above, these two counts allege injuries independent from the state-court judgment. Accordingly, *Rooker-Feldman* does not bar Counts III and IV.

### B. Count III: ADA Violation

Count III alleges that Defendants frequently sprayed pesticides outside Plaintiff's condominium unit in violation of the ADA despite Plaintiff's numerous requests for accommodation.[3] [37] ¶¶ 96–103. Defendants argue that Plaintiff fails to plead that the area around his unit constitutes a place of public accommodation subject to the ADA's requirements. [39] at 11–12. Plaintiff counters that he sufficiently pleads this claim, because he alleges that the condominium association contains publicly accessible areas. [46] at 9.

Under Title III of the ADA, a place of public accommodation means a "facility operated by a private entity whose operations affect commerce," where the facility falls within at least one of certain categories (such as places of lodging, restaurants, and retail establishments). 28 C.F.R. § 36.104. On its face, Plaintiff's complaint lacks factual allegations placing his condominium unit, or the surrounding area, within one of § 36.104's specified categories. *See generally* [37].

Plaintiff cites 28 C.F.R. § 36.207 in his response and argues that the association's sidewalks, public walkways, and entryways where Defendants apply

---

[3] Plaintiff's complaint mistakenly anchors this claim under Title II of the ADA, [37] ¶ 1, which prohibits disability discrimination in state and local government services, *see* 42 U.S.C. § 12131. The facts alleged in Count III, however, raise a Title III claim. *See* [37] ¶ 90–91. Both sides briefed the Title III question of whether the area surrounding Plaintiff's condominium unit constitutes a place of "public accommodation" under 42 U.S.C. § 12181(7). *See* [39] at 11–12; [46] at 9–10. Because "complaints need not identify the applicable law," *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017), this Court addresses Count III under Title III.

12

pesticides qualify as public spaces under that regulation. [46] at 9–10. By its plain language, however, § 36.207 does not apply here. That regulation concerns "places of public accommodation located *in* private residences"—not near private residences—and states that the portion of a private residence used as a place of public accommodation "extends to those elements used to enter the place of public accommodation," including sidewalks, doors, and entryways. § 36.207 (emphasis added). Plaintiff does not allege that any portion of his private condominium unit contains a place of public accommodation, and thus does not bring the sidewalks surrounding his unit within the purview of § 36.207. Plaintiff fails to cite any authority interpreting § 36.207 in the manner he seeks to construe it. [46] at 9–10.

Additionally, as Defendants argue, courts in this district and elsewhere hold that condominium units do not constitute places of public accommodation absent meeting the requirements for a "place of lodging" under § 36.104. *See, e.g.*, *Cohan v. Ocean Club at Deerfield Beach Condo. Ass'n, Inc.*, No. 14-60196-CIV, 2014 WL 1274128, at *2 (S.D. Fla. Mar. 27, 2014) ("A private condominium building may be classified as a place of public accommodation if" used for "short-term rentals of the variety normally associated with hotels or inns."); *Kromenhoek v. Cowpet Bay W. Condo. Ass'n*, 77 F. Supp. 3d 462, 479–80 (D.V.I. 2014); *Radivojevic v. Granville Terrace Mut. Ownership Trust*, No. 00 C 3090, 2001 WL 123796, at *3 (N.D. Ill. Jan. 31, 2001). Plaintiff's complaint lacks any allegations that place his condominium unit, or the condominium association as a whole, in the realm of hotels and inns. *See generally* [37]. Accordingly, this Court dismisses Count III.

13

### C. Count IV: Negligent Infliction of Emotional Distress

Count IV alleges that Defendants negligently inflicted emotional distress on Plaintiff by frequently spraying pesticides around his condominium unit. [37] ¶¶ 107–09. Defendants argue, among other things, that Count IV fails because Plaintiff fails to properly plead that they owe him any duty. [39] at 12–13.

Under Illinois law, a plaintiff must plead three things to state a negligence claim: (1) the defendant owes the plaintiff a duty; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injury. *E.g.*, *Parks v. Kownacki*, 737 N.E.2d 287, 297–98 (Ill. 1991). A direct victim's claim for negligent infliction of emotional distress must also include "an allegation of contemporaneous physical injury or impact" that caused the emotional distress. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 59–60 (Ill. 2016); *see also Cleveland v. Rotman*, 297 F.3d 569, 574 (7th Cir. 2002) ("Illinois follows the 'impact rule,' which allows a plaintiff to recover for negligent infliction of emotional distress *only if* the distress is directly and causally related to a physical injury.") (emphasis added).

Even assuming that Plaintiff sufficiently pleads a duty under Illinois law, he fails to plead that his alleged physical injuries caused his emotional distress, as Illinois law requires. In fact, he pleads the opposite and alleges that he has suffered physical injuries "as a result of the emotional distress caused by the defendants' ongoing negligence." [37] ¶ 109; *see also id.* ¶ 129 (Plaintiff "continues to suffer physical manifestations of fear and stress."). That does not suffice to state a claim under Illinois law. *See Cleveland*, 297 F.3d at 574 (affirming dismissal of a claim

14

for negligent infliction of emotional distress because the plaintiff "did not allege that Rotman's negligence caused Cleveland a physical injury that directly caused his emotional distress").

Plaintiff also alleges that he was "in the zone of physical danger from the on-going [sic] spraying of chemicals and pesticides," [37] ¶ 107, but the zone-of-physical-danger rule applies only for bystanders who witnessed another person's physical injury, *see Borcia v. Hatyina*, 31 N.E.3d 298, 310 (Ill. App. Ct. 2015) ("To have been within the 'zone of physical danger,' the plaintiff must have been in such proximity to the accident in which the direct victim was physically injured" that the plaintiff faced a high risk of physical impact.). Plaintiff fails to allege any other victim injured by the pesticides, and thus fails to plead that he was a bystander who faced a high risk of physical impact, *see id*. Thus, this Court dismisses Count IV.

### D. Count V: Intentional Infliction of Emotional Distress

Count V alleges that Defendants intentionally inflicted severe emotional distress upon Plaintiff by filling their retaliatory state lawsuit. [37] ¶¶ 122–24, 129–31. Defendants argue that this count fails because the statute of limitations has run under Illinois' discovery rule. [39] at 15–16. Plaintiff counters that Count V falls under the continuing violation rule, meaning that the limitations period has not yet started running. [46] at 11–12.

In Illinois, the statute of limitations for a personal injury claim—like intentional infliction of emotional distress—is generally two years. 735 ILCS 5/13-202. Under the discovery rule, the limitations period usually starts running when

"the party seeking relief knows or should reasonably know of an injury and that it was wrongfully caused." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 89 (Ill. 2003). Under the "continuing violation" rule, however, when a tort involves "a continuing or repeated injury," the limitations period does not start running until the date of the last injury or the date that the tortious acts stop. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 190 (Ill. 2002). The latter rule does not apply to "continual ill effects" stemming from a single overt act, but rather to "continuing unlawful acts and conduct" that could rightly be viewed as a "continuous whole." *Feltmeier*, 798 N.E.2d at 85–86.

Largely, Count V alleges that Plaintiff suffers many ongoing injuries—such as financial difficulties from defending the state lawsuit and extreme stress—that resulted from Defendants' "act of suing Plaintiff." [37] ¶¶ 122–25, 135, and 137. Because Defendants sued Plaintiff in February 2010, [39-2] at 2, Count V became time-barred in February 2012, *see* 5/13-202. Any alleged injuries flowing from Defendants' "single overt act" of filing a lawsuit against Plaintiff are time-barred "despite the continuing nature of the injury." *Feltmeier*, 798 N.E.2d at 85.

Plaintiff alleges some injuries in Count V, however, that do not stem from Defendants' single overt act of filing a state lawsuit. *See* [37] ¶¶ 126–29. At this stage, these injuries fall within the continuing violation rule. Plaintiff alleges that he received "unwarranted threats from Defendants," incurred "fines for non-existent violations" from 2009 through the present, and suffered "numerous acts of vandalism of personal property." *Id.* ¶ 127. These injuries do not flow from

Defendants' single act of suing Plaintiff in 2010; they allege a pattern of intentional harassment that continues through the present. *See Belleville Toyota*, 770 N.E.2d at 190. Alternatively, this portion of Count V survives because (aside from the fines), Plaintiff does not specify precise dates for each alleged injury. Courts should dismiss claims based upon a statute of limitations only when the complaint "plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

## IV. Conclusion

This Court partially grants and partially denies Defendants' motion to dismiss [39]. This Court grants the motion as to Counts I, II, III, IV, VI, and the portions of Count V alleging injuries that resulted from Defendants filing a lawsuit against Plaintiff in state court. This Court denies the motion as to the remaining portions of Count V. Any amended complaint shall be filed by 8/10/18. This case is set for a status hearing on 8/15/18 at 9:45 a.m. in Courtroom 1203.

Dated: July 19, 2018

Entered:

_____
John Robert Blakey
United States District Judge