UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER KRASZINSKI, | |
| Plaintiff, | Case No. 17-cv-2228 |
| v. | |
| ROB ROY COUNTRY CLUB VILLAGE ASSOCIATION, et al., | Judge John Robert Blakey |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christopher Kraszinski sued Rob Roy Country Club Village Association, its board of directors, and its property manager, Rowell Property Management, Inc., under the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq*. [67].[1] In a July 19, 2018 order, this Court granted Defendants' motion to dismiss Plaintiff's first amended complaint, [37], dismissing Counts I, II, III, IV, VI, and the portions of Count V alleging injuries that resulted from Defendants filing a lawsuit against Plaintiff in state court. [64]. This Court denied Defendants' motion as to the remaining portions of Count V. *Id*.

Plaintiff has since amended his complaint two times. [67] [73]. When Plaintiff

---

[1] Plaintiff's second amended complaint also purports to bring a civil rights action pursuant to the Americans with Disabilities Act of 1990 (ADA), [67] ¶ 1, and seeks monetary damages pursuant to the ADA, *id*. ¶ H. Plaintiff's second amended complaint, however, fails to plead any ADA violation. *See generally id*. Thus, this Court grants Defendants' motion to strike all mentions of the ADA from Plaintiff's second amended complaint, [70] at 14. Fed. R. Civ. P. 12(f) ("The Court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."). This Court denies Defendants' remaining motion to strike "[a]ny and all of Plaintiff's claims that relating to carpet and the 2010 state court lawsuit between him and the Board", [70] at 14, as moot in light of this ruling on Defendants' 12(b)(1) and 12(b)(6) motions.

1

sought leave to file a third amended complaint, he represented that he intended to "modify some language in the Complaint to better clarify the Plaintiff's positions [and] fix a typographical error" in the Complaint's title. [71] ¶ 4. This Court granted Plaintiff's request, [72], after which Plaintiff filed a third amended complaint adding 315 additional paragraphs and six new causes of action. [73]. Defendant subsequently moved to strike Plaintiff's third amended complaint and for Rule 11(c) sanctions. [76]. At a motion hearing on December 20, 2018, this Court: (1) granted Defendant's motion to strike the third amended complaint; (2) denied the request for sanctions and fees; and (3) ordered briefing on Defendants' motion to dismiss Plaintiff's second amended complaint (SAC), [69], which is now before this Court. [82].

For the reasons explained below, this Court partially grants and partially denies Defendants' motion [69].

I.  **Plaintiff's Allegations**[2]

This Court incorporates by reference, and presumes familiarity with, its prior opinion addressing Defendants' motion to dismiss Plaintiff's first amended complaint, [64], and thus only briefly revisits the facts from which Plaintiff's claims arise.

Plaintiff has lived in a condominium unit at Rob Roy since 1997. [67] ¶ 13. He suffers from a disabling autoimmune disease exacerbated by toxins such as pesticides and herbicides. *Id.* ¶¶ 23, 26, 31, 57. Beginning in 1997, Plaintiff, through his

---

[2] This Court takes the following facts from Plaintiff's SAC, [67], documents attached to the SAC, and documents central to the SAC and to which the SAC refers. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

2

mother, regularly asked Defendants to stop applying landscape pesticides and herbicides outside his condominium unit. *Id.* ¶ 14. Defendants have repeatedly denied each request and continue spraying chemicals around Plaintiff's unit up until today. *Id.* ¶¶ 19, 51, 59. Plaintiff alleges that even when his windows are open, Defendants spray pesticides in the direction of the open window, causing pesticides to flow into his unit. *Id.* ¶ 22. Moreover, Defendants apply pesticides under windy conditions through a pressurized hose, causing "pesticide spray drift" to unintended sites. *Id.* ¶ 20.

Following the progression of Plaintiff's autoimmune disease in 2009, his doctors explained that Plaintiff's wall-to-wall carpeting likely harbored environmental toxins that could aggravate his symptoms. *Id.* ¶ 33. Plaintiff and his doctors then asked Defendants to modify the Association's policy to allow Plaintiff to remove the carpeting from his unit; Defendants refused. *Id.* ¶¶ 33–34, 36. In 2010, Defendants sued Plaintiff and his mother in state court to prevent them from removing the carpeting in the unit. *Id.* ¶ 39. The state court subsequently issued a default judgment barring Plaintiff from removing the carpeting in his unit. *Id.* ¶ 45.

Following the state court judgment, Plaintiff continued to make requests to Defendants to remove his carpeting and terminate pesticide use. *Id.* ¶¶ 51, 54. In response to these requests, he alleges that Defendants issued him arbitrary fines, verbally harassed him, and vandalized his property. *Id.* ¶ 97. Because Defendants refuse to remove the unit's carpet and continue to spray pesticides, Plaintiff alleges

3

that his health continues to deteriorate despite intensive treatment and medical care. *Id.* ¶¶ 58–60.

Plaintiff's SAC brings claims for: (1) a civil rights violation under the FHA based upon spraying harmful pesticides (Count I); (2) a civil rights violation under the FHA based upon prohibiting carpet removal (Count II); (3) retaliation under the FHA (Count III); and (4) intentional infliction of emotional distress (Count IV). *See id.* ¶¶ 61–116.

Defendants move to dismiss for: (1) failure to state a claim, pursuant to Rule 12(b)(6), based upon statute of limitations; (2) lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), based upon the *Rooker-Feldman* doctrine; and (3) filing the SAC after this Court's deadline, pursuant to Rule 41(b). [69] ¶¶ 8–10. Alternatively, Defendants move for Plaintiff to plead more definite statements pursuant to Rule 12(e). *Id.* ¶ 12.

## II. Legal Standard[3]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged

---

[3] This Court discusses the legal standards for Defendants' Rule 41(b) and Rule 12(e) motions in its analysis below.

4

misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). When evaluating a complaint, this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Like Rule 12(b)(6), Rule 12(b)(1) requires this Court to construe Plaintiff's complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw reasonable inferences in his favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Courts evaluating Rule 12(b)(1) motions may look beyond the complaint to consider whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Silha*, 807 F.3d at 173 (When reviewing a challenge that there is *in fact* no subject matter jurisdiction, even if the pleadings are formally sufficient, "the court may look beyond the pleadings and view any evidence submitted").

### III. Analysis

Defendants move to dismiss on multiple grounds. [69]. This Court analyzes each argument in turn.

5

### A. Defendants' Rule 41(b) Motion to Dismiss

First, Defendants move to dismiss Plaintiff's SAC pursuant to Rule 41(b) because he filed his SAC one day after this Court's deadline, and after this Court had already granted a 10-day extension to file. [70] at 3; *see also* [66] [67]. It is well established that district courts maintain the authority "to dismiss a plaintiff's action with prejudice because of his failure to prosecute." *Foodworks USA, Inc. v. Foodworks of Arlington Heights, LLC*, No. C 1020, 2012 WL 3436577, at *3 (N.D. Ill. Aug. 14, 2012) (citing *Link v. Wabash R.R.*, 370 U.S. 626, 629 (1962)). This authority serves as "one of the tools available to district courts 'to achieve the orderly and expeditious disposition of cases.'" *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998) (per curiam) (quoting *Link*, 370 U.S. at 630–31).

But, "dismissal for failure to prosecute is an extraordinarily harsh sanction, to which courts should resort only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." *Dunphy v. McKee*, 134 F.3d 1297, 1299 (7th Cir. 1998) (citations omitted). Here, this Court cannot find Plaintiff's untimely filing—by one day—sufficiently extreme to justify dismissal for failure to prosecute. Thus, in its discretion, this Court denies Defendants' motion to dismiss pursuant to Rule 41(b).

### B. Defendants' Rule 12(b)(1) Motion to Dismiss Based Upon The *Rooker-Feldman* Doctrine

Second, Defendants argue that this Court lacks subject matter jurisdiction over the entirety of Plaintiff's SAC due to the *Rooker-Feldman* doctrine. *Id.* at 3–8. This Court agrees in part, and dismisses Count II pursuant to Rule 12(b)(1).

6

### 1. *Rooker-Feldman* Doctrine Generally

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) hold that no federal court except the United States Supreme Court "may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). The *Rooker-Feldman* doctrine thus applies when the state court's judgment serves as the source of the injury of which a plaintiff complains in federal court. *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005); *GASH Associates v. Rosemont*, 995 F.2d 726, 729 (7th Cir. 1993)). Further, the doctrine applies not only to claims that were actually raised before the state court, but also to claims that are "inextricably intertwined with state court determinations." *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (citing *Feldman*, 460 U.S. at 482 n.16).

In determining whether federal claims are "inextricably intertwined" with a state court judgment, "the crucial point is whether the district court is in essence being called upon to review the state-court decision." *Taylor v. Fannie Mae*, 374 F.3d 529, 533 (7th Cir. 2004) (internal quotations omitted). Ultimately, this determination hinges upon whether the federal claim alleges that the state court judgment caused the injury, or whether the federal claim alleges an independent prior injury that the state court failed to remedy. *Id.* (citing *Shorebank*, 182 F.3d at 555). If a court determines that a claim is inextricably intertwined, it must then determine whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings; if the plaintiff could have raised the issue in state court proceedings,

*Rooker-Feldman* bars the federal claim. *Id.* (citing *Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002)); *see also Kelley*, 548 F.3d at 605.

### 2. *Rooker-Feldman* Bars Count II

Count II alleges that Defendants violated the FHA by denying his requests to remove the carpet in his unit. [67] ¶¶ 73–89. As this Court explained in its previous order, addressing such a claim "would require this Court to review the injunction prohibiting Plaintiff from removing the carpet in his unit and decide whether the state court should have issued the injunction in the first place." [64] at 7; *see also* [70-2] (state court injunction ordering Plaintiff to comply with Defendants' bylaws regarding carpeting restrictions). Therefore, Count II falls directly within the confines of *Rooker-Feldman*. *See Taylor*, 374 F.3d at 532–33 (7th Cir. 2004) ("Claims that directly seek to set aside a state court judgment are de facto appeals and are barred without additional inquiry."); *see also Gilbert v. Illinois State Board of Education*, 591 F.3d 896, 900 (7th Cir. 2010) (affirming district court's dismissal of teacher's due process claim under *Rooker-Feldman* because the injury flowed directly from the Illinois Appellate Court's decision reinstating the administrative order that terminated the teacher's employment).

Accordingly, this Court dismisses Count II pursuant to the *Rooker-Feldman* doctrine for lack of subject matter jurisdiction.

### 3. *Rooker-Feldman* Does Not Bar Count III

Count III alleges, in part, that due to Plaintiff and his mother's continuous FHA requests—both to stop spraying pesticides and remove his carpeting—

8

Defendants retaliated against Plaintiff by filing the state court lawsuit in 2010. [67] ¶ 94. For reasons explained below, this portion of Count III is time-barred, and thus this Court need not consider whether it falls under the *Rooker-Feldman* doctrine.

The remainder of Count III, however, alleges retaliation in the form of arbitrary fines, verbal harassment, and vandalizing Plaintiff's personal property—all of which occurred after the state court judgment. [67] ¶¶ 97−101. Because these actions constitute injuries independent from the state court proceedings and issues raised therein, *Rooker-Feldman* does not bar Count III to the extent it relies upon these particular incidents. Accordingly, this Court denies Defendants' 12(b)(1) motion with respect to the remaining claims within Count III.

### 4. *Rooker-Feldman* Does Not Bar Count IV

Count IV alleges that Defendants intentionally inflicted severe emotional distress upon Plaintiff by: (1) filing the retaliatory state court lawsuit; and (2) "continuing harassment separate and apart from the collection attempts related to the state court judgment." [67] ¶ 108. To the extent that Plaintiff claims he suffers ongoing injuries as a result of filing the state lawsuit, this claim is also time-barred—as discussed below—and this Court need not consider whether the *Rooker-Feldman* doctrine applies.

The remainder of Count IV, however, alleges the same additional misconduct and injuries included within Count III—arbitrary fines, verbal harassment, and vandalizing Plaintiff's personal property—all of which occurred "separate and apart from the collection attempts related to the state court judgment." *Id.* ¶¶ 108, 111.

Thus, the *Rooker-Feldman* doctrine does not apply to the remaining incidents within Count IV, and this Court denies Defendants' Rule 12(b)(1) motion as to these claims.

### 5. *Rooker-Feldman* Does Not Bar Count I

Count I alleges that Defendants violated the FHA by continuing to use pesticides around Plaintiff's condominium unit, despite his requests for accommodation. *Id.* ¶¶ 61–72. Defendants argue that this argument is inextricably intertwined with the state court judgment, because the state court acknowledged Plaintiff's argument that Defendants filed the lawsuit due to Plaintiff's mother's requests to terminate pesticide-use. [70] at 7. But, as this Court explained in its previous opinion, the state court never decided whether Defendants' pesticide-use violates the FHA because its order focused solely upon the carpet issue. [70-2]. Instead, the state court decided only that Defendants did not file the lawsuit in response to Plaintiff's mother's protests about pesticides. [64] at 11; [70-1] at 4. Thus, the *Rooker-Feldman* doctrine does not bar Count I, and this Court denies Defendants' motion to dismiss Count I pursuant to Rule 12(b)(1).

### C. Defendants' Rule 12(b)(6) Motion Based Upon Statute of Limitations

Third, Defendants argue that to the extent that this Court "holds the *Rooker-Feldman* doctrine does not apply to bar any of the claims, the statute of limitations has run on all of plaintiff's claims." [70] at 9. Accordingly, Defendants move to dismiss all four counts of Plaintiff's SAC pursuant to Rule 12(b)(6). *Id.* Based upon this Court's above rulings, it need only consider whether Counts I, III, and IV are time-barred.

It is well-settled that "the period of limitations is an affirmative defense." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (citing Fed. R. Civ. P. 8(c)(1)). Therefore, while plaintiffs need not "anticipate or overcome affirmative defenses" such as those based upon the statute of limitations, "if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). Specifically, "on the subject of the statute of limitations . . . a complaint must plead . . . enough to show that the claim for relief is plausible." *Mitcheff*, 696 F.3d at 637.

### 1. Counts III and IV: Plaintiff's Lawsuit-Related Claims

Count III alleges, in part, that due to Plaintiff and his mother's continuous FHA requests—both to stop spraying pesticides and remove his carpeting—Defendants retaliated against Plaintiff by filing the state court lawsuit in 2010. [67] ¶ 94. Count IV similarly alleges, in part, that Defendants intentionally inflicted severe emotional distress upon Plaintiff by filing the retaliatory state court lawsuit. *Id*. ¶ 108. Because Defendants filed the state court lawsuit in 2010, both of these claims became time-barred in 2012. *See* [67] ¶ 39; *see also* 42 U.S.C. § 3813(a)(1)(A) (under the FHA, a civil enforcement action must be filed "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice"); 735 ILCS 5/13-202 (two-year statute of limitations for personal injury claims in Illinois).

Nevertheless, Plaintiff again maintains that both retaliatory filing claims survive under the "continuing violation" rule. [85] at 12. In Illinois, the "continuing

11

violation" rule dictates that when a tort involves "a continuing or repeated injury," the limitations period does not start running until the date of the last injury or the date that the tortious acts stop. *Belleville Toyota, Inc. v. Toyota Motor sales, U.S.A., Inc.*, 770 N.E.2d 177, 190 (Ill. 2002).[4] But, this rule does not apply to "continual ill effects" stemming from a single overt act; rather, it applies to "continuing unlawful acts and conduct" that could rightly be viewed as a "continuous whole." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85–86 (Ill. 2003). Therefore, as this Court has already explained, any alleged injuries "flowing from Defendants' 'single overt act' of filing a lawsuit against Plaintiff are time-barred 'despite the continuing nature of the injury.'" [64] at 16 (quoting *Feltmeier*, 798 N.E.2d at 85). As such, this Court dismisses Counts III and IV to the extent Plaintiff alleges that Defendants filed the state court lawsuit to: (1) retaliate against him in violation of the FHA; and (2) intentionally inflict severe emotional distress upon him.

### 2. Counts I, III, and IV: Plaintiff's Remaining Claims

Plaintiff has met his burden of plausibility, for statute of limitations purposes, as to his remaining FHA and IIED claims. *Mitcheff*, 696 F.3d at 637. As to Count I, Plaintiff alleges that at the time of filing, "Defendants continue to refuse Plaintiff's request for accommodation. The Defendants continue to regularly spray pesticides weekly in areas proximate to Plaintiff's dwelling." [67] ¶ 66. And as to Counts III and IV, Plaintiff alleges that Defendants: (1) verbally harassed him after the state court judgment; (2) arbitrarily fined him beginning in 2009 and continuing to present

---

[4] This Court does not consider whether the continuing violation theory applies to Plaintiff's FHA retaliation claim in Count III, as that count is not based upon Illinois law.

day; and (3) targeted his personal property in July 2017. *Id.* ¶¶ 98–101, 106. As this Court previously held, these injuries fall within the continuing violation rule, because they do not flow from Defendants' single act of suing Plaintiff about his carpet in 2010; instead, "they allege a pattern of intentional harassment that continues through the present." [64] at 17 (citing *Belleville Toyota*, 770 N.E.2d at 190). Moreover, courts should dismiss claims based upon statute of limitations only when the complaint "plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Absent any indication of untimeliness, and because Plaintiff's remaining claims fall within the continuing violations rule, this Court denies Plaintiff's Rule 12(b)(6) motion to dismiss based upon statute of limitations as to Count I, as well as Counts III and IV, to the extent they plead injuries unrelated to the state court lawsuit. [70] at 9–13.

### D. Defendant's Rule 12(e) Motion to Provide A More Definite Statement

Finally, Defendants ask this Court to order Plaintiff to provide a more definite statement, "including, but not limited to": (1) the specific years in which Plaintiff's allegations occurred; and (2) how Defendants targeted Plaintiff's personal property. *Id.* at 14–15.

Courts may grant motions for a more definite statement if a pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Choi v. Bd. of Trs. of the Univ. of Ill.*, No. 16 C 11627, 2017 WL 3278823, at *6 (N.D. Ill. Aug. 2, 2017) (citing *Wright v. Vill. of Phoenix*, No. 97 C 8796, 2000 WL 246266, at *9 (N.D. Ill. Feb. 25, 2000));

*see also* Fed. R. Civ. P. 12(e). Rule 12(e) motions are "designed to strike at unintelligibility rather than want of detail." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 916, 917 (N.D. Ill. 2016). Therefore, if a pleading "fairly notifies the opposing party of the nature of the claim, as required under [Rule] 8, a motion for a more definite statement should be denied." *Wright*, 2000 WL 246266, at *9 (collecting cases).

First, Defendants argue that they are "entitled to know what parts of Plaintiff's allegations fall within the two-year statute of limitations applicable to Counts 1, 2, 3, and 4." [70] at 15. Not so. Defendants' request serves as a thinly veiled attempt to make Plaintiff plead facts that will in turn allow them to present their statute of limitations defense. *See Caruth v. Wexford Health Sources, Inc.*, No. 16 C 6621, 2018 WL 3630014, at *3 (N.D. Ill. July 31, 2018) (explaining that defendants' "motion for a more definite statement seems to be an effort to get [plaintiff] to plead facts that would help [defendants] present its statute of limitations defense at the pleadings stage. That is not the purpose of Rule 12(e)"). Plaintiff's SAC is not unintelligible, and the law does not require him to plead around the statute of limitations to ease his opponents' burden of conducting routine discovery. Therefore, this Court denies Defendants' Rule 12(e) motion for a more definite statement of the specific years in which Plaintiff's allegations occurred.

Second, with respect to Plaintiff's claim that Defendants targeted his personal property, *see, e.g.*, [67] ¶ 111, this Court also finds that Plaintiff's allegation provides Defendants with sufficient notice. Defendants argue that not knowing which of the

14

Defendants committed the act, and how they targeted the property, renders them incapable of preparing a response. [70] at 15. But, Plaintiff specifically alleges that Defendants targeted his "personal property including certain organic therapeutic plants being grown on Plaintiff's balcony." [67] ¶ 101. Certainly, this allegation provides Defendants with sufficient information to make a good faith denial, or other response, without prejudice. *See Choi*, 2017 WL 3278823, at *6; *see also Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013) (denying 12(e) motion where complaint allegations did not identify specific defendants but was not "unintelligible").

Further, aside from these two requests, Defendants do not specify what additional information they need from Plaintiff in their Rule 12(e) motion. [70] at 14−15. Accordingly, this Court denies Defendants' Rule 12(e) motion for a more definite statement.

### E. Leave to Replead

Defendants argue that this Court should dismiss Plaintiff's SAC with prejudice. [86] at 5. Plaintiff argues that if this Court dismisses any claims, it should do so without prejudice. [85] at 15.

Although, in general, Rule 15(a) states that trial courts "should freely give leave [to amend] when justice so requires," that command can be outweighed by factors such as "undue delay, bad faith, and futility." *Fish v. Greatbanc Trust Co.*, 749 F.3d 671, 689 (7th Cir. 2014). Here, this Court finds that the record does not warrant giving Plaintiff leave to replead, because: (1) this Court has already given

Plaintiff the opportunity to amend multiple times, without success, [64]; (2) Defendants would suffer undue delay by further amendments; (3) this Court already granted Defendants' motion to strike Plaintiff's third amended complaint, [82]; and (4) the dismissed portions of Counts III and IV are time-barred.[5]  Accordingly, this Court dismisses Count II, as well as the portions of Counts III and IV alleging injuries that resulted from the state court judgment, with prejudice.

## IV. Conclusion

For the reasons explained above, this Court partially grants and partially denies Defendants' motion to dismiss [69].  This Court grants the motion as to Count II with prejudice, and the portions of Counts III and IV alleging injuries that resulted from Defendants filing the state court lawsuit against Plaintiff, with prejudice.  This Court denies the motion as to Count I, as well as those portions of Counts III and IV not relating to the state court lawsuit.  This case is set for a status hearing on 4/02/19 at 9:45 a.m. in Courtroom 1203.

Dated: March 18, 2019

Entered:

_____
John Robert Blakey
United States District Judge

---

[5] Plaintiff's opposition memorandum also notes—for the first time in this case and with no specificity—that "the state court case is still being litigated in state court." [85] at 15.  He therefore argues that he "should have the opportunity to amend his Complaint to reflect any changes in the state court order." *Id*.  Plaintiff's position does not change this Court's decision.  First, Plaintiff's SAC explicitly states that the period in which he could have appealed the judgment entered against him has passed. [67] ¶ 85.  Second, Plaintiff fails to explain how the state court proceedings would affect this case in any way. *See generally* [67]; [85].